# IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PASTOR ALAN WILLIAMS, an individual d/b/a My Brother's Place, and MY FRIENDS PLACE IN UNITY, LLC MY BROTHER'S PLACE II, LLC MY BEST FRIENDS PLACE, LLC 714 Miller Avenue Columbus, Ohio 43205 | JURY TRIAL REQUESTED |
| Plaintiffs, | PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| | JUDGE GRAHAM |
| | MAGISTRATE JUDGE JOLSON |
| OHIO DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES 30 East Broad Street, 36th Floor Columbus, Ohio 43215-3430 | |
| LORI CRISS Director Ohio Department of Mental Health and Addiction Services 30 East Broad Street, 36th Floor Columbus, Ohio 43215-3430 | |
| TINA M. NUTTER Ohio Department of Mental Health and Addiction Services 30 East Broad Street, 36th Floor Columbus, Ohio 43215-3430 | |
| ROBERT NUGEN Mental Health Administrator V Ohio Department of Mental Health and Addiction Services 30 East Broad Street, 36th Floor Columbus, Ohio 43215-3430 | |
| OLIVIA NICOLE WINEGARDNER Mental Health Administrator III Ohio Department of Mental Health | |

| | |
|---|---|
| and Addiction Services | } |
| 30 East Broad Street, 36th Floor | } |
| Columbus, Ohio 43215-3430, | } |
| | } |
| KRYSTAL L. SLADE | } |
| Behavioral Health Standards Surveyor | } |
| Ohio Department of Mental Health | } |
| and Addiction Services | } |
| 30 East Broad Street, 36th Floor | } |
| Columbus, Ohio 43215-3430. | } |
| | } |
| JODI SNIDER | } |
| Ohio Department of Mental Health | } |
| and Addiction Services | } |
| 30 East Broad Street, 36th Floor | } |
| Columbus, Ohio 43215-3430. | } |
| | } |
| BILL DERKSON | } |
| Correctional Program Coordinator | } |
| Ohio Department of Mental Health | } |
| and Addiction Services | } |
| 30 East Broad Street, 36th Floor | } |
| Columbus, Ohio 43215-3430. | } |
| | } |
| Defendants. | } |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Pastor Alan Williams, My Brother's Place II LLC, and My Best Friend's Place, LLC, and My Best Friend's Place in Unity (hereinafter "Plaintiffs"), by and through their undersigned counsel, hereby bring this Complaint against Defendants Lori Criss, Tina Nutter, Robert Nugen, Olivia Winegardner, Krystal Slade, Jodi Snider, Bill Derkson, and the Ohio Department of Mental Health and Addiction services (hereinafter Defendants).

## I.     Introduction

   Plaintiffs bring this Section 1983 action to redress violations of their constitutional rights by the Ohio Department of Public Health and several of its employees and agents.  Specifically, Ms. Tina Nutter, motivated by animus against the Plaintiff based on his religion and race, instigated and directed multiple lower-level employees to join her in engaging in multiple illegal warrantless searches of Pastor Williams personal papers, effects and other property under the guise of conducting lawful licensing inspections of his business properties.  These searches, which occurred on February 24, 2021, June 9, 2021, December 28, 2021, February 4, 2022, and September 19, 2022, encompassed locations and items that no reasonable person could have believed were related to any actual state interest in inspecting the operation of his facilities.  Moreover, during these searches, multiple individuals, including Ms. Nutter herself, engaged in additional unlawful activity including planting evidence, destroying evidence, and concealing evidence so as to convey the false impression that Mr. Williams properties were unsafe and unfit for habitation.  Collectively, these unlawful actions resulted in Plaintiff Williams and the two legal entities controlled by him losing their licenses to operate a combined total of four mental health and recovery facilities. As a result, Mr. Williams has been ruined financially.  Even worse, he has been unable to perform the work to which he has devoted his entire life: helping the homeless.

## II.     The Parties

1. The Plaintiff Pastor Alan Williams is a resident of Ohio who turns sixty-five next month.  He is an African American and Christian.  He is the Pastor at Jesus People Evangelistic Center, located at 1446 E. Livingston St., Columbus, Ohio.  He is a man of strong faith who has devoted his life to helping homeless and the less fortunate in Columbus.

2. An important part of Rev. Williams' ministry is outreach to the poor and homeless, who often suffer from mental problems and drug addiction.  Over the years, Rev. Williams heart would break when would see people suffering.  He became determined to help.  Starting in 2010, Rev. Williams decided to try to open a small residential facility where people experiencing homelessness could stay and try to address their addiction and mental health issues.  He named the house My Brother's Place, so-called because he considers himself to be brothers with anyone suffering from disability.  Both of Pastor Williams' parents were disabled, so he feels a strong sense of connection and gratitude to this community.

3. My Brother's Place was a smashing success.  It filled quickly and received favorable reviews from his residents, who stayed long term and often made great

progress toward controlling and fighting their addictions.  His success led him to quickly open three additional small facilities.  Mr. Williams owns all four facilities.

4. My Brothers Place II, LLC, is a domestic limited liability company.  It was established on March 20, 2019, and it operates exclusively in Ohio.  It is controlled by Rev. Alan Williams, who acts as its registered agent.  Its primary intended purpose is to operate a residential facility to benefit the homeless.

5. My Best Friends Place, LLC, is a domestic limited liability company.  It was established on March 18, 2016, and it operates exclusively in Ohio.  It is controlled by Rev. Alan Williams, who acts as its registered agent.  Its primary intended purpose is to operate a residential facility to benefit the homeless.

6. My Friend's Place in Unity, LLC, is a domestic limited liability company.  It was established on June 14, 2011, and it operates exclusively in Ohio.  It is controlled by Rev. Alan Williams, who acts as its registered agent.  Its primary intended purpose is to operate a residential facility to benefit the homeless.

7. Defendant Ohio Department of Mental Health and Addiction Services (ODMHAS) is a department of state government whose headquarters are at 30 East Broad Street, 36th Floor, Columbus, Ohio 43215.

8. Director Lori Criss, Tina Nutter, Robert Nugen, Krystal Slade, Jodie Snider, Bill Derkson, and Olivia Winegardner are each individual people.  Each is sued in their official capacity.  ODMHAS was their employer at all relevant times.  Defendants acted under color of state law within the course and scope of their employment when they violated Rev. Williams rights on multiple occasions as detailed below.

### III.    JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S. Code § 1983 - Civil action for deprivation of rights, 28 U.SC. § 1331 (federal question), and over his state law claims pursuant to 28 U.S. C. § 1367, and pursuant to 28 U.S. C. § 1343 (civil rights).

10. Venue is proper because all the events giving rise to the claims asserted herein occurred in Columbus, Ohio, which is in this district.

## IV. STATEMENT OF FACTS

11. Prior to 2020, Plaintiff Rev. Williams had a long and successful history of working with the Ohio Department of Health and Human Services with respect to the operation of all four facilities. For twelve years, all four of his facilities consistently passed multiple state inspections. These inspections generally resulted in very few negative findings, and any issues that arose during the inspections were quickly redressed by Rev. Williams. Together, Rev. Williams and the Department did a lot of good in the community for a lot of people.

12. This situation changed drastically some after Ms. Tina Nutter, an employee of the Department, took over as the individual in charge of reviewing Rev. Williams' facilities. For more than a decade, Pastor Williams had worked closely with Ms. Nutter's predecessor, Teri Hill, without any incident. Initially, Rev. Williams tried to roll with the change. He was very friendly and tried to work with Ms. Nutter as he had with other regulators in the past. He noticed Ms. Nutter was not particularly friendly or polite when interacting with him, but he assumed that was just the way Ms. Nutter conducted business. Certain comments she made later caused him to re-assess this behavior, and Mr. Williams now believes Ms. Nutter was out to get him from the get-go (see below).

13. Prior to February 24, 2021, (the date Ms. Nutter first illegally searched his home), Rev. Williams already had concerns about Ms. Nutter's behavior. Ms. Nutter would order him to take certain actions, such as taking a bed from upstairs down to his basement or taking out the trash personally (as opposed to having a resident assist with the process). When Rev. Williams asked to see the law that required him to take such an action, Ms. Nutter refused to provide it and responded with escalating hostility. Although Rev. Williams believed then and still believes to this date that most of what she ordered him to do was not legally required by OAC 5122-30-14 and was done merely to harass him, he complied with all such orders.

14. Following these random orders, which Ms. Nutter barked at him in an aggressive manner, made Mr. Williams feel like a slave. It caused him extreme emotional distress that continues to this day. Rev. Williams is currently receiving treatment to help process his emotions due to the trauma of Ms. Nutter's abusive behavior.

15. With respect to at least one of these orders, Mr. Williams was able to protest and have Ms. Nutter's "misunderstanding" of the law cleared up. Ms. Nutter was

forcing Rev. Williams to take an X-ray T.B. test every year, even though the law states that such results may last up to five years.  Rev. Williams ultimately tried to ask a supervisor to intervene.  This request was denied, but Ms. Nutter later reversed herself and informed Rev. Williams that his test results would be good for five years as the law provides.  This situation merely served to further anger Ms. Nutter because Williams had attempted to contact her supervisor about a "legal requirement" that she simply made up.

16. Ms. Nutter and Rev. Williams also had a long-running argument over patient medications and whether they could be self-administered during this period. Plaintiff requested that all his residents go to see if their doctors could approve them to do self-administration of medication with no help needed.  He had decided that he would no longer admit residents who needed help with administering their medications, as he did not have the resources or expertise to devote to that issue at that time.

17. When Rev. Williams informed Ms. Nutter of his decision, she reacted with hostility, accusing him of not following her orders. She then scheduled a meeting to inspect one of the homes.  Instead of showing up for that inspection, Ms. Nutter went to a different one of Rev. Williams facilities and entered it all by herself.  She was aware it was a "safe" time for her to conduct this activity because she knew Rev. Williams would be waiting for her at the location where they had actually agreed to meet.  While on the other property that day, Ms. Nutter performed an inspection that included areas and items that no reasonable person would believe would be subject to search during this type of inspection, such as closed desk drawers and file cabinets.  She went through numerous personal items on this date that had nothing to do with any of the facilities.  She also went through documents that relate to Rev. Williams Ministry and church.  It should have been immediately obvious to Ms. Nutter that these items had nothing to do with the licensing of a health care facility. By tricking Rev. Williams' into going to another location and searching whatever she liked once she entered the property, Ms. Nutter violated Mr. Williams Constitutional right to be secure in his papers and effects.

18. During this "inspection," Ms. Nutter also ordered the residents at this address to take medications that they had already taken and/or did not need.  Rev. Williams was not there to educate her about the residents' medical needs and stop her from giving potentially hazardous orders.

19. Ms. Nutter also took many pictures on this occasion.  She never informed Rev. Williams of this fact.  Upon information and belief, she did so because she had already decided she was going to continue until she was able to take Rev. Williams' licenses away.

20. Upon discovering what Defendant Nutter had done, Rev. Williams drove to the house that Ms. Nutter was searching.  When Pastor Williams arrived, a Resident whose initials are D.V. was coming down the stairs.  Ms. Nutter told D.V. to take his medication. However, unbeknownst to Ms. Nutter, D.V. uses a hearing aid.  It was clear to Rev. Williams that D.V. had not heard her.  When Pastor Williams attempted to tell her that D.V. did not clearly hear her, Ms. Nutter had a temper tantrum and told Pastor Williams, "I am sick of you."  A few minutes later, she called him "a lying preacher."  She said she intended to put him out of business completely.

21. Ms. Nutter's followed through with her threats on June 9, 2021.   On this day, Defendants Nutter and Winegardner without warrants, consent or probable cause did illegally trespass into the homes of Pastor Williams. There, under the thinly-veiled guise of conducting lawful regulatory inspections, the Defendants illegally searched areas and removed items with no legitimate regulatory purpose.  They also moved items and objects from one place to another within the facility and photographed them.  These staged photographs were designed to make it appear that Rev. Williams' facilities were in violation of state law.

22. Also on June 9, 2021, Defendant Derkson conspired/planned and did trespass into another property of Rev. Williams without a warrant.  He and other Defendants stayed on property for hours doing searches that went far beyond any reasonable regulatory scope and included areas personal to Rev. Williams and personal documents as well as documents related to his ministry.

23. Also on June 9, 2021, Defendant Nugen did trespass and entered the private property of Rev. Williams. He stayed for hours performing excessive searches and creating staged pictures to use at a future hearing against Rev. Williams. Defendant Nugen had no warrant, no probable cause, and no Consent from Plaintiff to enter areas of the facility that were Plaintiff's private property.

24. Again, on June 9, 2021, Defendant Slade did trespass/entered Plaintiff's private property without a warrant.  Under the guise of conducting a proper regulatory inspection, Ms. Slade under the directions of her supervisors performed an

excessive search and entered into the Plaintiff's personal effects. She took photos on this occasion.

25. On December 28, 2021, Defendants Nugen and Hammond again entered one of the Plaintiffs' homes. Again, they had no probable cause, warrants or consent to enter the home. Nugen and Hammond performed an excessive search that went beyond any legitimate regulatory interest.

26. During this search, Defendant Nugen spoke to a resident whose initials are D.V. This conversation was caught on camera. Later, at the February 24, 2022, hearing concerning the licenses to the homes, Defendant Nugen would testify that D.V. made several statements to him that could cause legitimate regulatory concerns about the safety of the homes. However, the audio of the video of the conversation reveals this sworn testimony was untrue. Also, D.V. has signed an affidavit saying he never made the statements testified to by Mr. Nugen.

27. On September 19, 2022, without providing any notice to Rev. Williams whatsoever, Defendants Winegardner and Nutter entered one of Rev. Williams' houses. Once again, they lacked any probable cause, warrants, or consent. Supervisor Winegardner and Tina Nutter performed a search that exceeded any reasonable regulatory scope. They took pictures to use at a revocation hearing that was originally scheduled to be held on February 23, 24, and 26, 2023.

28. These Defendants' search clearly trespassed into the private property of Rev. Williams. This time, they were caught on video. Video plainly shows Defendants Winegardner and Nutter going through Pastor Williams' private things and personal items in his desk as well as church records. These defendants can also be seen taking photographs of Rev. Williams' mail and other papers without his consent.

29. These Defendants intended to use, and did in fact use, the fruits of their illegal searches—alongside the evidence they manufactured, such as staged photos – to illegally revoked Pastor Williams licenses. If not for the fact they were caught on camera, Rev. Williams would never have known they were there that day until they sprang their "trap" at the hearing. Williams never received a call from either defendant concerning their search.

30. The video taken that day plainly shows both Nutter and Winegardner asked a resident whose initials are R.H if there was another resident there by the name of C. The defendants claimed to have received an anonymous tip complaint

concerning Williams and C.  The resident responded "no," and explained that he had never heard of anyone named C, and that no one by that name lived there. Upon being informed of this fact, both Nutter and Winegardner ignored it. Instead, they continued to search based on what they now obviously knew was a bogus complaint.  Both Defendants took full advantage of the opportunity of having access to the home without Rev. Williams' knowledge. Upon information and belief, no actual complaint concerning Williams and C was made by a member of the public; the entire statement was a ruse used by the Defendants to access the property.

31. On Jan. 23, 2023, a hearing was held to revoke all four of Reverend Williams's licenses to run his facilities pursuant to the existing state regulatory scheme.  At that hearing, several of the Defendants, including Nugen and Derkson, presented false testimony to convince the administrative judge to revoke the licenses.  In addition, the Defendants presented false evidence including the staged photographs they took while they were alone in the Plaintiff's homes.

32. Following the hearing, on May 11, 2023, the hearing examiner filed a report recommending revocation of all four licenses.  On May 30, 2023, the Department issued an adjudication order revoking the provider licenses at all four of Reverend Williams' facilities.

33. Following the hearing, the Defendants asked Mr. Williams if he planned to appeal, because if not, they were going to send letters to all of the residents instructing them to vacate the property by a date certain.  Rev. Williams informed them he intended to appeal the ruling.  Notwithstanding this information, the Defendants sent eviction letters to all the residents immediately, causing all the homes to lose their residents long before the legal process had reached its proper conclusion.  This was done in violation of Rev. Williams' rights to due process.  It also cost him all the revenue he would have had for a few additional months to help offset all his costs.

34. The Plaintiff appealed.  On December 20, 2023, the trial court found that the hearing examiners' findings were supported by substantial evidence and affirmed the orders.

35. The Plaintiff appealed to the Court of Appeals of Ohio's Tenth Appellate District.  On August 27, 2024, that court entered an order affirming the trial court.

36. Throughout this entire process, the defendants acted in their official capacity and under color of state law.

37. Plaintiff filed his initial complaint with this court on January 27, 2025.

38. Due to the state's legal violations, Pastor Williams privacy was invaded.  He has lost his sense of security.  He has trouble trusting people, especially state employees.

39. Due to the Defendants' actions, Rev. Williams was slandered and demeaned and made a public spectacle in front of the entire Mental Health Community.  During and after these events, Defendant Nutter called numerous other agencies and made slanderous statements concerning the conditions at Rev. Williams facilities and impugned Pastor Williams' veracity and honesty.  Some individuals working at these agencies reported to Pastor Williams what Ms. Nutter was saying.  Defendant Nutter usually concluded her remarks with a request to "help me to take Pastor Williams down."

40. During the Appeal starting in June 2023, the department published to the entire community at least 2 sets of Letters that his residences were closing effective June 29, 2023, due to their hearing based on this tainted evidence and false testimony.

41. Due to these actions by Ms. Nutter and ODMHAS, others in the community believed their lies and started coaxing his residents, including longstanding residents, to leave his residences under the belief that they were not safe long before a final decision had been made concerning his licenses.  This lost business has caused extreme financial hardship for Plaintiff Williams.

42. Pastor Williams is devastated by the loss to his reputation caused by the Defendants' unlawful actions.  Reverend Williams had built his reputation up over 12 years. Defendants used lies and staged photographs to convince the community that the Defendants' homes were horrible.  Now, Plaintiff fears that many of his former residents, as well as many new individuals he could have helped, have been forced to live in the streets.

## V.  LEGAL CLAIMS

43.  Plaintiff Pastor Williams raises numerous legal claims based on the alleged facts.

<u>COUNT I – § 1983 Unlawful Religious Discrimination</u>

44. Plaintiff incorporates the preceding paragraphs herein by reference.

45. By engaging in the conduct discussed above, Defendants discriminated against Plaintiff based on his religion.  Pastor Williams had a twelve-year favorable history of working with the department when Ms. Nutter took over from her predecessor, Teri Hill.

46. Once Ms. Nutter took over, she made numerous comments to Pastor Williams and others disparaging his religion and his job as a preacher.  She referred to him as one of those "lying preachers."  Her comments to others even included stories about preachers who tied kids up in basements, etc., insinuating that Pastor Williams might also engage in such behavior.  Plaintiff has no idea why Ms. Nutter hates preachers.

47. By treating Pastor Williams differently and more harshly during the review process due to his religion, the Defendant's violated the First Amendments' guarantee of freedom of religion, which has been incorporated against the states by the Fourteenth Amendment.

48. By violating the Plaintiffs' Constitutional rights, defendants violated 42 U.S. Code § 1983, which provides a civil action for deprivation of constitutional rights.  As a result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

COUNT II – § 1983 Equal Protection

49. Plaintiff incorporates the preceding paragraphs herein by reference.

50. By engaging in the conduct discussed above, Defendants failed to provide Pastor Williams with Equal Protection under the law.  Defendants discriminated against Plaintiff based on protected classifications including his religion and race.

51. By treating Pastor Williams differently and more harshly during the review process, the Defendant's violated the Fifth Amendments' guarantee of equal protection, which has been incorporated against the states by the Fourteenth Amendment.

52. By violating the Plaintiffs' Constitutional rights, defendants violated 42 U.S. Code § 1983, which provides a civil action for deprivation of constitutional rights.  As a

result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

## COUNT III - § 1983 Illegal Search

53. Plaintiff incorporates the preceding paragraphs herein by reference.

54. By engaging in the conduct discussed above, Defendants committed an illegal warrantless of his property on February 24, 2021.  They did so both themselves directly and in some cases by ordering or supervising a subordinate to do so.

55. Defendants entered the property under the grounds of performing a lawful licensing inspection, but once on the property, their search exceeded any reasonable scope and encompassed items and areas that had no relation to licensing whatsoever.

56. By exceeding the lawful scope of their regulatory inspection, the Defendants violated the Pastor Williams' Fourth Amendment rights to be free from unreasonable searches and seizures and secure in his papers and effects.  This right has been incorporated against the states by the Fourteenth Amendment.

57. By violating the Plaintiffs' Constitutional rights, defendants violated 42 U.S. Code § 1983, which provides a civil action for deprivation of constitutional rights. As a result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

## COUNT IV - § 1983 Illegal Search

58. Plaintiff incorporates the preceding paragraphs herein by reference.

59. By engaging in the conduct discussed above, Defendants committed an illegal warrantless of his property on or about June 9, 2021.  They did so both themselves directly and in some cases by ordering or supervising a subordinate to do so.

60. Defendants entered the property under the grounds of performing a lawful licensing inspection, but once on the property, their search exceeded any reasonable scope and encompassed items and areas that had no relation to licensing whatsoever.

61. By exceeding the lawful scope of their regulatory inspection, the Defendants violated the Pastor Williams' Fourth Amendment rights to be free from unreasonable searches and seizures and secure in his papers and effects.  This right has been incorporated against the states by the Fourteenth Amendment.

62. By violating the Plaintiffs' Constitutional rights, defendants violated 42 U.S. Code § 1983, which provides a civil action for deprivation of constitutional rights. As a result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

### COUNT V - § 1983 Illegal Search

63. Plaintiff incorporates the preceding paragraphs herein by reference.

64. By engaging in the conduct discussed above, Defendants committed an illegal warrantless of his property on or about December 28, 2021.  They did so both themselves directly and in some cases by ordering or supervising a subordinate to do so.

65. Defendants entered the property under the grounds of performing a lawful licensing inspection, but once on the property, their search exceeded any reasonable scope and encompassed items and areas that had no relation to licensing whatsoever.

66. By exceeding the lawful scope of their regulatory inspection, the Defendants' violated the Pastor Williams' Fourth Amendment rights to be free from unreasonable searches and seizures and secure in his papers and effects.  This right has been incorporated against the states by the Fourteenth Amendment.

67. By violating the Plaintiffs' Constitutional rights, defendants violated 42 U.S. Code § 1983, which provides a civil action for deprivation of constitutional rights. As a result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

### COUNT VI - § 1983 Illegal Search

68. Plaintiff incorporates the preceding paragraphs herein by reference.

69. By engaging in the conduct discussed above, Defendants committed an illegal warrantless of his property on or about February 4, 2022.  The Defendants did so

both themselves directly and in some cases by ordering or supervising a subordinate to do so.

70. Defendants entered the property under the grounds of performing a lawful licensing inspection, but once on the property, their search exceeded any reasonable scope and encompassed items and areas that had no relation to licensing whatsoever.

71. By exceeding the lawful scope of their regulatory inspection, the Defendants violated the Pastor Williams' Fourth Amendment rights to be free from unreasonable searches and seizures and secure in his papers and effects.  This right has been incorporated against the states by the Fourteenth Amendment.

72. By violating the Plaintiffs' Constitutional rights, defendants violated 42 U.S. Code § 1983, which provides a civil action for deprivation of constitutional rights. As a result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

## COUNT VII - § 1983 Illegal Search

73. Plaintiff incorporates the preceding paragraphs herein by reference.

74. By engaging in the conduct discussed above, Defendants committed an illegal warrantless of his property on or about September 19, 2022.  They did so both themselves directly and in some cases by ordering or supervising a subordinate to do so.

75. Defendants entered the property under the grounds of performing a lawful licensing inspection, but once on the property, their search exceeded any reasonable scope and encompassed items and areas that had no relation to licensing whatsoever.

76. By exceeding the lawful scope of their regulatory inspection, the Defendants violated the Pastor Williams' Fourth Amendment rights to be free from unreasonable searches and seizures and secure in his papers and effects.  This right has been incorporated against the states by the Fourteenth Amendment.

77. By violating the Plaintiffs' Constitutional rights, defendants violated 42 U.S. Code § 1983, which provides a civil action for deprivation of constitutional rights. As a

result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

### COUNT VIII - § 1981 Equal Rights Under Law

78. Plaintiff incorporates the preceding paragraphs herein by reference.

79. Plaintiff Pastor Alan Williams is an African American (Protected Class) and had a right to have contractual agreements with residents in his 4 homes. Plaintiff was profiled and discriminated against by all Defendants and this discrimination resulted in the severe limitations of his rights to make and enforce contracts as is enjoyed by white citizens. Defendants' actions under color of law have created dissolution of community trust and suspicions in the mental health community of Plaintiffs ability to create and provide adequate quality care to any resident.

80. Defendant Ohio Health Department of Mental Health and Addiction Services failed to properly train and supervise its employees to prevent these unlawful actions.

81. By failing to afford Pastor Williams equal rights under the law throughout this process, the Defendants violated 42 U.S. Code § 1981, which guarantees all citizens equal rights.

82. Defendants' actions and reputational harm has caused the mental health community to cut off almost all contact with Pastor Williams due to Defendants' false allegations. This miscarriage of Justice has cause Plaintiff significant harm and should warrant Punitive Damages.

### COUNT IX - § 1983 Due Process

83. Plaintiff incorporates the preceding paragraphs herein by reference.

84. At the hearing to revoke Plaintiffs' licenses, individual Defendants introduced stage photos, evidence that was illegally obtained, fabricated evidence, and perjured testimony.  In so doing, they violated Pastor Williams' due process right to a fair revocation hearing.

85. Defendant Ohio Health Department of Mental Health and Addiction Services failed to properly train and supervise its employees to prevent these unlawful actions.

86. By failing to afford Pastor Williams due process under the law at his revocation hearing, the Defendants violated 42 U.S.C. §1983. As a result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

### COUNT X - § 1983 Due Process

87. Plaintiff incorporates the preceding paragraphs herein by reference.

88. After losing at the administrative hearing, Pastor Williams promptly informed the Defendants' that he intended to appeal the decision. Although they were aware that the legal case was still ongoing and might continue for years, the Defendants' sent letters to all of Plaintiffs' residents and told them the facilities were closing and requiring them to vacate almost immediately.

89. As a result of the defendants' actions, Plaintiffs' businesses were destroyed while the legal issue was still being contested.

90. By falsely declaring victory and destroying Plaintiffs' business while the legal case was still live, the Defendants violated Pastor Williams right to due process.

91. As a result of the Defendants' violations, Pastor Williams suffered damages including but not limited to lost income and mental anguish.

### COUNT XI – Slander (Defendants Department and Nutter only)

92. Plaintiff incorporates the preceding paragraphs herein by reference.

93. Throughout the time that she oversaw the review of Plaintiffs' licenses, Ms. Nutter contacted other agencies and individuals and intentionally made statements that she knew to be false in an ultimately successful effort to drive Pastor Williams completely out of business.

94. These intentional false statements caused damages to Pastor Williams including, but not limited to, lost income and mental anguish.

### COUNT XII – Department's Regulatory scheme for revoking the license of Health care facilities is unconstitutional both facially and as applied to Pastor Williams.

95. Plaintiff incorporates the preceding paragraphs herein by reference.

96. As a U.S. citizen, Plaintiff and other similarly situated license-holders have a right to a trial by jury for all private rights and traditional actions at common law.

97. In *SEC v. Jarkesy*, 603 U.S. 109, 140 (2024), the Supreme Court held that this requirement applied to novel statutory regimes, so long as they were akin to actions at common law.

98. The Seventh Amendment has been incorporated against the States by the 14th Amendment.

99. Pastor Williams suffered damages because of Defendants' unconstitutional revocation system, including, but not limited to, lost income and mental anguish.

## JURY DEMAND

Pursuant to federal rule of Civil Procedure 38(b). Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff incorporates the preceding paragraphs by reference herein.

WHEREFORE, Plaintiff seeks the following relief:

I. Actual economic and compensatory damages sufficient to make him whole in light of his pain and suffering, reputational injury, and mental anguish;

II. Punitive damages against Defendants sufficient to deter further wrongdoing;

III. Treble damages;

IV. Statutory damages and fines;

V. Injunctive relief to prevent further violations and restore Plaintiffs' licenses;

VI. Attorneys' fees, litigation expenses, costs, pre- and post-judgment interest as provided by law;

VII. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/S/
Matthew F. Stowe (0104302)
Porter Wright Janofsky & Walker LLC
41 South High Street
mstowe@porterwright.com
(614) 227-2134
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

A true copy of the foregoing Complaint has been sent to the opposing counsel today by electronic mail this 25th day of April, 2025.

_____/S/_____
Matthew F. Stowe (0104302)
Porter Wright Janofsky & Walker LLC
41 South High Street
mstowe@porterwright.com
(614) 227-2134
Counsel for Plaintiffs