IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| Alan Williams, *et al.*, | : | |
| | : | Case No. 2:25-cv-00070 |
| Plaintiffs, | : | |
| v. | : | Judge Graham |
| | : | |
| Ohio Department of Mental | : | Magistrate Judge Jolson |
| Health and Addiction | : | |
| Services, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court upon the Defendants' motion to dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Doc. 14. For the reasons that follow, the Defendants' motion is **GRANTED**.

## BACKGROUND

The Plaintiffs in this matter are Pastor Alan Williams ("Williams") and the LLCs he operates as residential facilities to benefit the homeless community[1] ("collectively, "Plaintiffs"). The Defendants in this matter are the Ohio Department of Mental Health and Addiction Services ("ODMHAS") and various employees of ODMHAS (the "Employee Defendants"). Plaintiffs initiated this suit after ODMHAS investigations and enforcement actions resulted in the loss of licenses to operate four (4) residential facilities.

---

[1] Namely, My Friends Place in Unity, LLC, My Brother's Place II, LLC, and My Best Friends Place, LLC.

[1]

Plaintiffs claim that their constitutional rights were violated by the various ways in which the investigations were tainted. Specifically, Plaintiffs allege that the investigations were animated by prejudice against Williams' race and religion and the results were based on five (5) illegal searches conducted from February 24, 2021, and September 19, 2022. Furthermore, Plaintiffs allege that the Defendants planted, destroyed, and concealed evidence "so as to convey the false impression that Mr. Williams' properties were unsafe and unfit for habitation." Doc. 13, # 263.

An ODMHAS hearing was held on January 23, 2023, regarding whether to revoke four (4) licenses to operate Plaintiffs' facilities. *Id.* at 269. On May 30, 2023, ODMHAS issued an adjudication order revoking all four (4) licenses. *Id.* Plaintiffs appealed to the Franklin County Court of Common Pleas, raising much of the same arguments concerning the propriety of the investigations as he does in the instant case. Doc. 3-2, # 216. The Court of Common Pleas ultimately affirmed the ODMHAS order of May 30, 2023. Doc. 13, # 269. Plaintiffs again appealed, this time to the Court of Appeals of Ohio's Tenth Appellate District, and they left with the same result when the appellate court affirmed the decision below. *Id.*

Plaintiffs filed the instant suit on January 27, 2025. In their Second Amended Complaint ("SAC"), Plaintiffs raise the following claims:

Count I: § 1983 Unlawful Religious Discrimination

Count II: § 1983 Equal Protection

Counts III-VII: § 1983 Illegal Search (based on alleged searches conducted on February 24, 2021, June 9, 2021, December 28, 2021, February 4, 2022, and September 19, 2022, respectively).

[2]

Count VIII: § 1981 Equal Rights Under Law

Count IX: § 1983 Due Process claim based on the administrative hearing procedures.

Count X: § 1983 Due Process claim based on Defendants' execution of the license revocation order before Plaintiffs exhausted their appeals.

Count XI: Slander (raised only against Defendants ODMHAS and Tina Nutter)

Count XII: Alleging the ODMHAS regulatory scheme is unconstitutional both facially and as applied to Plaintiffs.

Doc. 13.

Defendants filed the motion to dismiss currently before the Court, arguing for dismissal based on jurisdictional grounds, pursuant to Fed. Civ. R. 12(b)(1), and based on Plaintiffs' purported failure to state a claim, pursuant to Fed. Civ. R. 12(b)(6). Doc. 14. In their responsive pleading, Plaintiffs conceded that Defendant ODMHAS should be dismissed from the suit, thus leaving only the individual Defendants. Doc. 15, # 329.

### Standard of Review

A motion to dismiss brought under Fed. Civ. R. 12(b)(1) argues that the Court lacks subject matter jurisdiction to hear the dispute. A motion to dismiss brought under Fed. Civ. R. 12(b)(6) argues that the operative complaint fails to state a claim for which relief can be granted. In either case, the court is "[r]equired to construe the complaint in a light most favorable to the plaintiff and to accept the factual allegations as true." *Leisure v. FBI of Columbus, Ohio*, 2 F. App'x 488, 489 (6th Cir. 2001). However, the court is not required to credit a claimant's "summary allegations

[3]

or unwarranted legal conclusions." *Id.* (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). Plaintiff bears the burden of an affirmative showing of jurisdiction, without which dismissal is required. *See Walls v. Waste Res. Corp.*, 761 F.2d 311, 317 (6th Cir. 1985) (citing *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)). "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

## DISCUSSION

Under Rule 12(b)(1), Defendants argue that the *Rooker-Feldman* doctrine strips this Court of jurisdiction to review a final state court judgment.[2] Under Rule 12(b)(6), Defendants argue that certain claims are barred by res judicata, and that Plaintiffs have failed to state a claim for which relief can be granted. The Court discusses these arguments in turn.

### I.     Plaintiffs' Claims Largely Evade the *Rooker-Feldman* Doctrine.

Defendants argue that Plaintiffs' illegal search and seizure claims (Counts III-VII) cannot be adjudicated by this Court pursuant to the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine, as Defendants describe it, "is based on the negative

---

[2] Defendants originally raised three (3) arguments under 12(b)(1), but two (2) of them applied solely to Defendant ODMHAS, and thus they moot in light of Plaintiffs' concession that the Department should not be a part of this case.

[4]

inference that, if appellate court review of [final judgments from the highest court of a state] is vested in the U.S. Supreme Court," pursuant to 28 U.S.C. § 1257(a), then "federal district courts lack jurisdiction to review such matters." Doc. 14, # 299.

In determining whether the *Rooker-Feldman* doctrine applies, the Court must look to "the source of the injury" alleged in the complaint. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). The inquiry is whether the source of the injury is the state court decision, in which case the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction, or if "there is some other source of injury, such as a third party's actions." *Id.*

In the instant case, Defendants contend that the argument under Counts III-VII of the SAC "is the exact same argument that [Plaintiffs] made" in the state court proceedings, and which the state tribunals found unpersuasive. Doc. 14, # 300. Therefore, Defendants argue, this Court is without jurisdiction over such claims "because they seek appellate review of state court judgments." *Id.*

Plaintiffs argue that they are merely presenting an "independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," thereby negating the application of *Rooker-Feldman*. Doc. 15, # 330 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 (2005)). In such circumstances—when a plaintiff "attempts to litigate in federal court a matter previously litigated in state court"—the federal district court "may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but

[5]

federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Id.*

The Court agrees with Plaintiffs that the *Rooker-Feldman* doctrine does not apply here. Plaintiffs are not alleging an injury with its source in a state court judgment; rather, much like the claimants in *Hohenberg v. Shelby County, Tennessee*, Plaintiffs here challenge "the allegedly wrongful actions and omissions that led to their judgments, not the judgments themselves." 68 F.4th 336, 340 (6th Cir. 2023). Furthermore, Plaintiffs' prayer for relief seeks "actual economic and compensatory damages," "punitive damages," "treble damages," "statutory damages and fines," and attorney fees and costs (doc. 13, # 277), none of which "would amount to 'review and rejection' of any of the judgments binding the claimants." *Hohenberg*, 68 F.4th at 341. This is true regardless of whether Plaintiffs raised the same arguments in state court and lost. Because such injuries alleged and the relief sought are not traceable to a state court *judgment*, Plaintiffs' re-run of arguments raised unsuccessfully in state court may be barred by principles of res judicata, but not the jurisdictional bar of the *Rooker-Feldman* doctrine.

However, Plaintiffs *also* seek "injunctive relief to prevent further violations and restore Plaintiffs' licenses." Doc. 13, # 277. Though not made explicit by the text of SAC, such relief appears to be based on Count XII, which alleges that the "regulatory scheme for revoking the license of Health care facilities is unconstitutional both facially and as applied to Pastor Williams." *Id.* at # 276. While the Court finds that it has jurisdiction over the claim itself (*see Hohenberg*, 68 F.4th

[6]

at 341 (holding *Rooker-Feldman* does not bar declaratory relief that plaintiffs' rights were violated)), the Court further finds that the requested injunction and license-restoration tilt into *Rooker-Feldman* territory, where the Court cannot grant such relief without effectively sitting in review of a state court judgment. *See Lawrence v. Welch*, 531 F.3d 364, 371 (6th Cir. 2008) ("claims seeking injunctive relief are barred by *Rooker–Feldman* if they necessarily require the federal court to determine that a state court judgment was erroneously entered."). Thus, the Court concludes that Defendants' *Rooker-Feldman* argument is well-taken to the narrow extent that it bars the Court from issuing one form of relief sought by Plaintiffs.

## II.     Plaintiffs' Claims in Counts I-X are Barred by Res Judicata.

Defendants argue that Plaintiffs' claims are barred by res judicata based on the preceding litigation in Ohio courts. Federal courts "look to the state's law to assess the preclusive effect it would attach to [the] judgment." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citations omitted). The Sixth Circuit has articulated the four (4) elements of claim preclusion in Ohio as follows:

> (1) [A] prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Defendants contend that, over the course of Plaintiffs' administrative appeal in the Franklin County

[7]

Court of Common Pleas and their subsequent appeal to the Tenth District Court of Appeals, all four (4) elements have been met. As to Counts I-X, the Court agrees.

### a. The First, Second, and Fourth Elements are Satisfied as to Counts I-X of the Second Amended Complaint.

Indisputably, there is a prior final, valid decision on the merits by a court of competent jurisdiction, satisfying the first element. *See My Friend's Place in Unity v. Dep't of Mental Health & Addiction Servs.*, 2024-Ohio-3257, *appeal not allowed,* 2024-Ohio-5340, 175 Ohio St. 3d 1532, 245 N.E.3d 791. And there is no dispute that this ("second") action arises from the same transaction or occurrence, satisfying the fourth element.

The second element requires the Court to consider whether this action involves "the same parties[] or their privies" as the state court proceedings. *Hapgood*, 127 F.3d at 493. Ohio courts "have applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine," holding that "'a mutuality of interest, including an identity of desired result,' may create privity." *Kirkhart v. Keiper*, 2004-Ohio-1496, ¶ 8, 101 Ohio St. 3d 377, 379, 805 N.E.2d 1089, 1092 (quoting *Brown v. Dayton*, 2000-Ohio-148, 89 Ohio St. 3d 245, 248, 730 N.E.2d 958, 962).

In the state court action, the appellants were My Friend's Place in Unity, My Brother's Place, My Brother's Other Place, and My Best Friend's Place (collectively, the "Facilities"). In the instant case, the Plaintiffs are the same, with the addition of Williams, the owner and operator of the Facilities. On the other side of the *v.*, only

[8]

ODMHAS was named as a party during the state court proceedings, while the instant action includes seven (7) employees of the Department as well, named in their official capacities. Doc. 13. Williams and the Facilities plainly have mutuality of interest, as do ODMHAS and its employees in their official capacities. *See Heike v. Cent. Michigan Univ. Bd. of Trs.*, 573 F. App'x 476, 481-82 (6th Cir. 2014) (official capacity employees are in privity with their governmental entity employer) (citing cases). Therefore, the Court finds that the parties of the instant action are identical to, or in privity with, the parties of the state court proceedings, thus satisfying the second element.

### b. The Third Element is Satisfied as to Counts I-X of the Second Amended Complaint.

The third element asks whether the instant claims "were or could have been litigated in the first action." *Hapgood*, 127 F.3d at 493. The Sixth Circuit has recognized that this element "concerns only the legal possibility of bringing the disputed claims in the previous action." *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 416 (6th Cir. 2016). Under this standard, res judicata has been applied when the rules of civil procedure for the prior forum would allow the precluded claims, regardless of whether they were actually raised. *See Doe ex rel. Doe v. Jackson Loc. Schs. Sch. Dist.*, 422 F. App'x 497, 501 (6th Cir. 2011). On the other hand, res judicata is not applicable to a claim which was not ripe when the previous action was commenced. *See Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 522 (6th Cir. 2011).

[9]

In the instant case, the bulk[3] of Plaintiffs' claims were or could have been raised in the state court proceedings. Plaintiffs do not dispute that at least some of the claims and issues before the court were previously raised in state court, but they offer no colorable argument for why res judicata would not bar this Court's consideration of those matters. For example, while both the trial and appellate courts conducted thorough analyses of the warrantless search and seizure claims, Plaintiffs curiously claim that "none of their opinions cited the governing law or analyzed the claims using the well-known standard for determining if administrative searches have exceeded their scope." Doc. 15, # 333. In fact, both opinions cite controlling precedent from the Supreme Court of Ohio in addition to the relevant statutes. See *My Friend's Place in Unity*, 2024-Ohio-3257 at ¶¶ 20-21 (citing authorities to conclude that "holders of licenses for residential facilities consent to inspections by [ODMHAS] when they apply for and maintain licenses to operate these facilities."). Whether these authorities provide the "well-known standard" to which Plaintiffs refer is unclear, as Plaintiffs have not provided any authority for nor articulation of such a standard.

Furthermore, the allegations in the SAC make it clear that the previously unasserted claims *could have* been raised by Plaintiffs as they pursued their appeal in the Ohio courts. *See* doc. 13. Plaintiffs largely concede that the Ohio Court of Common Pleas has jurisdiction to review the claims they raise for the first time in the instant case. Doc. 15, # 332. *See State ex rel. Schwarzmer v. Mazzone*, 2025-Ohio-

---

[3] The exceptions are Counts XI (slander) and XII (facial and as applied constitutional challenge), which are discussed below.

1246, 178 Ohio St. 3d 455, 459, ("The common pleas court is a court of general subject-matter jurisdiction with power over 'all matters at law and in equity that are not denied to it.'") (quoting *Saxton v. Seiberling*, 48 Ohio St. 554, 29 N.E. 179 (1891)). Nevertheless, Plaintiffs argue that certain claims were not ripe at the time of the administrative appeal, and that, regardless, they were "not required to bring the claims at that time," pursuant to *Harrison v. Montgomery Cnty., Ohio*, No. 20-4051, 2021 WL 1881382 (6th Cir. May 11, 2021). Doc. 15, # 332. Plaintiffs are incorrect in both respects.

Start with the ripeness question. Plaintiffs argue that the "due process claims" could not have been raised previously because they "involve [their] treatment in the administrative hearing and on appeal," and therefore "did not accrue until the state court proceedings in which Plaintiffs' rights were being violated were complete." Doc. 15, # 333. But the due process claims raised in the SAC do not allege rights violations in the state court proceedings. Of Counts I-X, the only claim that accrued after the end of the administrative proceedings is Count X (due process),[4] concerning the allegation that Defendants wrongfully informed Plaintiffs' residents of the license revocation while Plaintiffs' appeal was pending. Doc. 13, # 276-77. Plaintiffs cite no authority supporting a due process right to a stay of execution of an administrative order during pendency of an appeal. Even assuming such a right exists, Plaintiffs could have exercised that right by seeking to suspend the administrative order in the Court of Common Pleas during the appeal, as provided by the Ohio Revised Code. *See*

---

[4] The other due process claim, Count IX, concerns the fairness of the revocation hearing, an issue which was litigated in the state court proceedings.

[11]

Ohio Rev. Code § 119.12.[5] Defendants note that Plaintiffs raised these "exact same facts" in a motion for contempt in the Court of Common Pleas, which denied the motion. Doc. 16, # 355 (citing *My Friend's Place in Unity et al. v. Ohio Dept. of Mental Health & Addiction Servs.*, Franklin County Court of Common Pleas docket Case No. 23-cv-004267); *see also Buck*, 597 F.3d at 816 ("Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."). Alternatively, to the extent that Plaintiffs' theory of Count X depends on a finding that the license revocation was itself wrongfully obtained, it must fail, because res judicata precludes this Court from adjudicating that previously litigated issue. *See* doc. 3-2, # 236 (Court of Common Pleas decision finding the license revocation order was "supported by reliable, probative, and substantial evidence and is in accordance with law.").

Plaintiffs' reliance on *Harrison v. Montgomery County* for the proposition that they did not need to raise all their claims in state court is misplaced. In *Harrison*, the Sixth Circuit held, "if a plaintiff chooses to pursue an administrative appeal, claim preclusion may bar a later attempt to seek the same relief." 997 F.3d at 651. The claimant in *Harrison* "did not pursue an administrative appeal," which, the panel explicitly acknowledged, "sets her case apart." *Id.* Even though the Plaintiffs here have indeed pursued an administrative appeal, and are now seeking the same relief,

---

[5] Paragraph (E) states, "The filing of a notice of appeal shall not automatically operate as a suspension of the order of an agency. If it appears to the court that an unusual hardship to the appellant will result from the execution of the agency's order pending determination of the appeal, the court may grant a suspension and fix its terms."

[12]

they simply emphasize the Sixth Circuit's "may" as if it were an escape hatch from long-standing principles of res judicata. Doc. 15, # 333. The Court is not persuaded. As a further distinction, much of the Sixth Circuit's discussion in *Harrison* concerns why the claims at issue could *not* be raised during the time of the administrative appeal (for complicated and idiosyncratic reasons not present here).

The unique facts of *Harrison* do not alter the general rule that res judicata will preclude a claim that could have been raised in a prior proceeding. *Carroll v. City of Cleveland*, 522 F. App'x 299, 305 (6th Cir. 2013) (applying res judicata where claimants "could have asserted each of the claims they raise here" in prior administrative appeal). Therefore, because Counts I-X of the SAC were or could have been raised in state court, those claims are now precluded by res judicata.

### III. Counts XI and XII Fail to State Claims for Which Relief Can be Granted.

Two claims escape the application of res judicata but nevertheless warrant dismissal. In Count XI, Plaintiffs raise a common law slander claim solely against Defendant Nutter, alleging that she "contacted other agencies and individuals and intentionally made statements that she knew to be false in an ultimately successful effort to drive Pastor Williams completely out of business." Doc. 13, # 276. The SAC is vague as to when any such statements occurred, alleging that Nutter made such statements "throughout the time she oversaw the review of Plaintiffs' licenses," (*id.*) and "during and after these events." *Id.* at # 270. Without more, the Court cannot determine when this claim accrued and thus cannot say that it could have been raised previously. But the same vagaries that save the slander claim from the res judicata

[13]

bar also doom the claim as inadequately pleaded. At no point do Plaintiffs identify the content of the allegedly slanderous statements. *See Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1092 (S.D. Ohio 2021) (to state a claim for slander or libel, plaintiff must plead sufficient facts as to the content of the alleged statements). Rather, Plaintiffs' allegations are entirely conclusory, which warrants dismissal under Fed. Civ. R. 12(b)(6).

In Count XII, Plaintiffs allege that ODMHAS' "Regulatory scheme for revoking the license of Health care facilities is unconstitutional both facially and as applied to Pastor Williams." *Id.* at # 276. Though Plaintiffs raised a facial and as-applied constitutional challenge in state court, the claim currently before the Court is based on *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024), which had not been decided before Plaintiffs appealed the administrative order. Therefore, Count XII could not have been raised in the state court proceedings. Regardless, this claim is without merit.

In *Jarkesy*, the Supreme Court recognized a Seventh Amendment right to a jury trial for claims that are "legal in nature," even when arising from agency enforcement of "novel statutory regimes." 603 U.S. at 126, 139. At issue in *Jarkesy* was whether the respondents were entitled to a jury trial based on the Securities and Exchange Commission's enforcement action seeking civil penalties for alleged securities fraud. *Id.* at 115. The Supreme Court answered affirmatively: "The SEC's antifraud provisions replicate common law fraud, and it is well established that common law claims must be heard by a jury." *Id.* at 120. Furthermore, because the

[14]

punitive nature of the civil monetary penalties sought were "legal in nature," they implicated the Seventh Amendment right to a jury trial as "a type of remedy at common law that could only be enforced in courts of law." *Id.* at 122-23 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).

Plaintiffs do not demonstrate how this reasoning applies to the facts of this case. Rather, Plaintiffs simply argue that "prior to [*Jarkesy*], administrative regimes like those in Ohio were understood to be perfectly legal," but that now it is possible "to raise a claim that the system is unconstitutional for numerous reasons." Doc. 15, # 333-34. Elsewhere in their briefing, in response to Defendants' argument that Count XII is inadequately pleaded for failing to identify which statute or regulation is allegedly unconstitutional, Plaintiffs contend that they "are alleging the entire structure is now illegal under [*Jarkesy*]." *Id.* at # 339. For support, Plaintiffs allude to *Jarkesy*'s "extensive attack" on "numerous aspects of administrative courts, questioning their legitimacy more broadly." *Id.*

The Court does not read *Jarkesy* to be the blank check Plaintiffs claim it to be. Regardless, the Court agrees with Defendants that they "should not be expected to guess which particular provision is the basis for the claim." Doc. 14, # 318. Plaintiffs' purported attack on "the entire structure" (doc. 15, # 339) simply does not "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Therefore, dismissal is warranted for Counts XI and XII, and the Court need not address the remaining arguments in Defendants' motion to dismiss.

[15]

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss for failure to state a claim for which relief can be granted. Counts I-X, which were or could have been litigated in the prior proceeding in state court, are precluded on the basis of res judicata. Counts XI and XII fail to state a plausible claim to relief. Therefore, Plaintiffs' Second Amended Complaint (doc. 13) is **DISMISSED**.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: June 5, 2026

[16]